**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| AFGHAN YAR INTERNATIONAL CONSTRUCTION COMPANY LIMITED d/b/a ACCL INTERNATIONAL,<br><br>House 1215/A<br>New Wazir Akbar Khan<br>Shirpoor<br>Kabul, Afghanistan<br><br>AFGHAN YAR INTERNATIONAL LOGISTICS SERVICES COMPANY d/b/a ACCL INTERNATIONAL,<br><br>House 1215/A<br>New Wazir Akbar Khan<br>Shirpoor<br>Kabul, Afghanistan<br><br>*Plaintiffs*,<br><br>v.<br><br>U.S. DEPARTMENT OF STATE,<br><br>2201 C Street, NW<br>Washington, DC 20520<br><br>ANTONY J. BLINKEN, in his official capacity as Secretary of State,<br><br>2201 C Street, NW<br>Washington, DC 20520<br><br>*Defendants*. | Case No. 21-1740<br><br>**COMPLAINT FOR DECLARATORY JUDGMENT AND INJUNCTIVE RELIEF** |

Plaintiffs Afghan Yar International Construction Company Limited and Afghan Yar

International Logistics Services Company, each doing business as ACCL International

(collectively "ACCL") bring this action for declaratory and injunctive relief against Defendants U.S. Department of State and Antony J. Blinken, in his official capacity as Secretary of State (collectively, "State Department").  This action challenges the State Department's unlawful direction to ACCL's contractors to cease doing business with ACCL.  Through its direction, the State Department impermissibly instituted a *de facto* debarment of ACCL without following the required procedures outlined in the Federal Acquisition Regulation ("FAR") and Department of State Acquisition Regulation ("DOSAR").  The State Department's actions in this regard are arbitrary, capricious, and contrary to law or regulation.  As such, ACCL is entitled to judicial review and relief under sections 702 and 703 of the Administrative Procedures Act ("APA"), 5 U.S.C. §§ 702, 703.  In support of its claims and causes of action, ACCL alleges as follows:

## PARTIES

1. Afghan Yar Construction Company Limited ("Afghan Yar Construction") is a diversified multinational company incorporated under the laws of Afghanistan, headquartered in Kabul, Afghanistan, with offices in Germany, Iraq, and the United Arab Emirates.  Since the beginning of the United States' operations in Afghanistan, the company has performed services in support of the United States Government under subcontracts with prime contractors of the State Department.

2. Afghan Yar International Logistics Services Company ("Afghan Yar Logistics") is a diversified multinational company incorporated under the laws of Afghanistan, headquartered in Kabul, Afghanistan, with offices in Germany, Iraq, and the United Arab Emirates.  Since the beginning of the United States' operations in Afghanistan, the company has performed services in support of the United States Government under subcontracts with prime contractors of the State Department.

3. Afghan Yar Construction and Afghan Yar Logistics both conduct business under the trade name ACCL International.

4. Defendant U.S. Department of State is a Department of the Executive Branch of the United States Government and an agency within the meaning of 5 U.S.C. §§ 551(1), 701(b)(1).

5. Defendant Antony J. Blinken is the Secretary of State and the senior official at the State Department. Plaintiff sues Secretary Blinken in his official capacity as the Secretary of State for conduct that occurred following his appointment.

## JURISDICTION AND VENUE

6. This Court has subject matter jurisdiction under 28 U.S.C. § 1331 because this action arises under the United States Constitution, the APA, 5 U.S.C. § 551 *et seq.*, and challenges agency action that is *ultra vires*.

7. The Court has authority to grant declaratory and injunctive relief under the Declaratory Judgment Act, 28 U.S.C. § 2201 *et seq.*; 5 U.S.C. § 702; and the Court's inherent equitable powers.

8. Venue is proper in this district under 28 U.S.C. § 1391(e)(1), because officers or employees of agencies of the United States acting in their official capacities and agencies of the United States are defendants, and because a substantial part of the events or omissions giving rise to this action occurred in this district.

## FACTUAL ALLEGATIONS

9. Habibullah Pirzada formed Afghan Yar Construction and Afghan Yar Logistics in 2002 and 2010, respectively. Mr. Pirzada is a native of Afghanistan, and in 2012, the State Department issued Mr. Pirzada a 10-year business visa. The U.S. Department of Defense,

Central Command ("CENTCOM") supported Mr. Pirzada's visa application.  Mr. Pirzada's U.S. visa remains valid.

10. Mr. Pirzada is the President and 100% owner of Afghan Yar Construction and Afghan Yar Logistics (collectively, "ACCL International"), and is responsible for operations globally.  Two of Mr. Pirzada's brothers, Mahmood Pirzada and Mukhsen Mokhammad, hold minority ownership stakes in ACCL International affiliates.  Mukhsen Mokhammad oversees ACCL International operations in the UAE and receives a monthly salary for his services.  Mahmood Pirzada, who oversees ACCL International operations in Afghanistan and receives a monthly salary from ACCL International, resides in the United States with his family, as he holds a Special Immigrant Visa entitling him to permanent residency in the country.

11. Neither ACCL International nor its owner or management (*i.e.*, Mr. Pirzada, Mahmood Pirzada and Mukhsen Mokhammad) are subject to U.S. sanctions or placed on any U.S. restricted party lists, including the Specially Designated Nationals List; Sectoral Sanctions Identifications List; Entity List; Denied Persons List; Unverified List; and the Debarred List.

12. Since the beginning of the United States' engagement in Afghanistan, ACCL International has been awarded numerous contracts from or through the State Department and the Defense Department.  Until the actions challenged in this complaint, ACCL International had $50-60 million dollars of U.S. contracts and subcontracts in place and opportunities to expand ACCL International's services to embassies in Iraq.

13. Over the past decade, ACCL International has received more than 60 letters from a variety of sources, including the State Department, commending, recommending, or otherwise praising ACCL International's performance and expertise.

14. Since 2015, Afghan Yar Logistics d/b/a ACCL International has been a subcontractor to DynCorp International ("DynCorp") under its Afghanistan Life Support Services ("ALiSS") prime contract with the State Department. ACCL International consistently earned high performance ratings. For the current performance period, DynCorp said of the company, "ACCL continues to go above and beyond to meet urgent mission requirements. Their established relationships in the global market have greatly aided in bridging Program gaps."

15. On or about April 29, 2021, ACCL International received a Notice of Disposition from DynCorp declaring that DynCorp will not exercise its renewal options under the ALiSS subcontract. ACCL International immediately sought clarification from DynCorp. The company relayed to ACCL International that the State Department orally instructed DynCorp to cease using ACCL International in any capacity, and that this prohibition extended to all State Department programs both in Afghanistan and Iraq. DynCorp further informed ACCL International that the State Department could not provide further information about the directive.

16. Since 2018, Afghan Yar Construction d/b/a ACCL International has been a subcontractor to Pacific Architects and Engineers Inc. ("PAE") in support of Prime Contract 19AQMM18F2129, OASIS – Security and Support Services ("SaSS") II with the State Department, through which ACCL International provides facility, operations, maintenance, and life support services for the CNJC (Criminal Justice Task Force and the Counter Narcotics Justice Center), SIU (Sensitive Investigative Unit), and NIU (National Interdiction Unit) Compounds in Kabul, Afghanistan.

17. On May 20, 2021, PAE informed ACCL International that it was terminating for convenience ACCL International's subcontract based on "written direction" from the State

5

Department "to terminate immediately all ongoing work with [ACCL International] in support of" the SaSS contract.

18. ACCL International has attempted, without success, to obtain information from the State Department about the specific basis on which the State Department instructed DynCorp and PAE to cease doing any business with ACCL International. DynCorp and PAE say that they are unable to provide any information beyond the direction they received from the State Department.

## CLAIMS FOR RELIEF

### Count 1: The *De Facto* Debarment of ACCL International Violates the Administrative Procedure Act, 5 U.S.C. § 706(2)

19. ACCL International incorporates the above paragraphs by reference.

20. Under the APA, "[a] person suffering legal wrong because of agency action, or adversely affected or aggrieved by agency action within the meaning of a relevant statute, is entitled to judicial review thereof." 5 U.S.C. § 702.

21. The APA grants courts the authority to: overturn agency action that is arbitrary and capricious, an abuse of discretion, or otherwise not in accordance with law; overturn agency action that violates a right or privilege under the United States Constitution; or overturn agency action that fails to observe a procedure that is required by law. 5 U.S.C. § 706.

22. The State Department's direction to DynCorp and PAE to cease doing business with ACCL International under prime contracts awarded by the State Department operates as a *de facto* debarment of ACCL International, and thus constitutes final agency action that is reviewable by this Court. *See* 5 U.S.C. §§ 551(13), 704

23. Debarment is a policy tool that the government uses to ensure that it contracts only with "responsible contractors." 48 C.F.R. § 9.402. The consequences of debarment are

severe: "Contractors debarred, suspended, or proposed for debarment are excluded from receiving contracts, and agencies shall not solicit offers from, award contracts to, or consent to subcontracts with these contractors, unless the agency head determines that there is a compelling reason for such action [*cross citations omitted*]. Contractors debarred, suspended, or proposed for debarment are also excluded from conducting business with the government as agents or representatives of other contractors." 48 C.F.R. § 9.405(a). For purposes of debarment, a contractor includes subcontractors under a government contract. 48 C.F.R. § 9.403.

24. Debarment may occur only if the agency follows the formal procedures outlined in the FAR (and any agency-specific supplement, like the DOSAR). In particular, 48 C.F.R. § 9.406-1 permits a debarring official (*i.e.*, agency head or its designee) to debar a contractor for causes outlined in 48 C.F.R. § 9.406-2 only if the official complies with the procedures outlined in 48 C.F.R. § 9.406-3.

25. A prerequisite to any debarment is issuance to the contractor of "a notice of proposed debarment." 48 C.F.R. § 9.406-3; *see also* 48 C.F.R. § 609.406-3(c)(2) ("When a determination is made to initiate an action, the debarring official shall provide to the contractor and any specifically named affiliates written notice in accordance with FAR 9.406-3(c)."). That notice must, among other things, indicate: (a) "the reasons for the proposed debarment in terms sufficient to put the contractor on notice of the conduct or transaction(s) upon which it is based;" and (b) "the cause(s) relied upon under 9.406-2 for proposing debarment." 48 C.F.R. § 9.406-3(c)(2), (3).

26. The FAR requires that a contractor be permitted an opportunity to "submit, in person, in writing, or through a representative, information and argument in opposition to the proposed debarment, including any additional specific information that raises a genuine dispute

over the material facts." 48 C.F.R. § 9.406-3(c)(4).  If an agency bases a debarment action on a cause other than conviction or civil judgment, the agency must conduct a fact-finding proceeding that the agency transcribes and that permits the contractor to appear with counsel, submit documentary evidence, present witnesses, and confront any person the agency presents.  48 C.F.R. § 9.406-3(b)(2); *see also* 48 C.F.R. § 609.406-3(b).

27. The State Department failed to comply with any of the regulatory procedures for debarment.

28. Even when an agency fails to debar a contractor through formal proceedings, a *de facto* debarment nevertheless occurs "when a contractor or subcontract has, for all practical purposes, been suspended or blacklisted from working with a government agency without due process, namely, adequate notice and a meaningful hearing."  *Phillips v. Spencer*, 390 F. Supp. 3d 136, 155 (D.D.C. 2019).

29. The State Department directed at least DynCorp and PAE to cease doing business with ACCL International under prime contracts awarded by the State Department.  The State Department further prohibited the companies from contracting with ACCL International in the future to provide services in support of contracts issued by the State Department.  This blacklisting of ACCL International by the Government operates as a *de facto* debarment of ACCL International.  Such action without following the required procedures in the FAR and DOSAR is, by definition, arbitrary and capricious, an abuse of discretion, and otherwise not in accordance with law.

30. The State Department's unlawful acts are causing and will continue to cause irreparable harm to ACCL International and third parties.

**Count 2: The *De Facto* Debarment of ACCL International was *Ultra Vires***

31. ACCL International incorporates the above paragraphs by reference.

32. The State Department's directive to cease doing any business with ACCL International operates as a *de facto* debarment. FAR 9.406 and DOSAR 609.406 outline the specific and exclusive procedure for the State Department to debar a contractor or subcontractor; however, the State Department failed to follow these procedures.

33. The State Department's actions against ACCL International accordingly were *ultra vires* and in excess of the agency's authority. *Larson v. Domestic & Foreign Commerce Corp.*, 337 U.S. 682, 689-90 (1949); *Aid Ass'n for Lutherans v. U.S. Postal Serv.*, 321 F.3d 1166, 1173 (D.C. Cir. 2003),

34. The State Department's unlawful acts are causing and will continue to cause irreparable harm to ACCL International and third parties.

## REQUESTED RELIEF

WHEREFORE, ACCL International requests that this Court grant the following relief:

(1) Issue a declaratory judgment pursuant to 28 U.S.C. § 2201(a) that the direction to cease doing business with ACCL International and effective debarment of the company is unlawful;

(2) Issue an order vacating and setting aside the *de facto* debarment of ACCL International; preliminarily and permanently enjoining the State Department from implementing or enforcing the *de facto* debarment, and preserving the status quo; and

(3) Grant any other and further relief that this Court may deem just and proper.

Date: June 30, 2021

Respectfully submitted,

SQUIRE PATTON BOGGS (US) LLP

*/s/ Jeremy W. Dutra*
Jeremy W. Dutra (Bar No. 488130)
2550 M Street, NW
Washington, DC 20037
(202) 626-6600
jeremy.dutra@squirepb.com

*Counsel for Plaintiffs Afghan Yar International Construction Company Limited and Afghan Yar International Logistics Services Company*

Of Counsel

Karen R. Harbaugh
SQUIRE PATTON BOGGS (US) LLP
2550 M Street, NW
Washington, DC 20037
(202) 626-6600
karen.harbaugh@squirepb.com

10